585 A.2d 358

IN THE MATTER OF THE PROPORTIONALITY
REVIEW PROJECT.

July 24, 1990.

This matter having come before the Court on the application of the Attorney General for a preliminary determination, prior to submission of the final report of the Court's Special Master, of the appropriate "universe" of cases to be used for the purpose of proportionality review of death sentences,

And the Court having heard the argument of counsel and having reviewed the briefs of the parties and the interim report of the Special Master,

And good cause appearing;

It is ORDERED that the motion of the Attorney General be, and hereby is, denied.

The Capital Punishment Act provides that on the "request of the defendant, the Supreme Court shall * * * determine whether the [death] sentence [imposed on a defendant convicted of capital murder] is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *N.J.S.A.* 2C:11–3e. Pursuant to that mandate, by Order dated July 29, 1988, this Court appointed Professor David C. Baldus, of the University of Iowa Law School, as Special Master for the purpose of developing a system for proportionality review.

In April 1989, we granted the Attorney General's motion to submit briefs and present oral argument in support of his request that the Court determine the appropriate universe of cases against which a comparison of a challenged death sentence is to be made in order to assure proportionality. Arguments were held on September 11, 1989. The Special Master filed an interim report with the Court in May of 1990 and met with the Court in the presence of counsel on June 11, 1990.

Throughout the proceedings, the Attorney General has urged that the Court's preliminary determination of the relevant universe of cases would delineate the scope of the Special Master's task and eliminate unnecessary expenditure of time and resources. The Attorney General contends that the only appropriate universe is one comprised exclusively of those cases in which a death sentence has been imposed under the Capital Punishment Act, and that such a universe of cases would be consistent with the practice of a majority of other jurisdictions that have developed proportionality-review systems.

In *State v. Ramseur*, 106 *N.J.* 123, 524 *A.*2d 188 (1987), we noted that "the proportionality review provision in the Act is an important procedural mechanism to safeguard against the arbitrary and capricious imposition of the death penalty." *Id.* at 330, 524 *A.*2d 188. Observing that proportionality review implicates "difficult and sensitive issues," we forecasted that

> our efforts to devise a procedure of review that will adequately protect defendants from the arbitrary and capricious imposition of the death penalty prohibited by *Furman v. Georgia, supra,* 408 *U.S.* 238, 92 *S.Ct.* 2726, 33 *L.Ed.*2d 346 [1972]; will be an evolving process. In addition to involving criminal justice experts, these efforts may involve experts from disciplines outside the law. We shall seek the advice of such experts to assist us in this process.
>
> [*Id.* at 328, 524 *A.*2d 188.]

In evaluating the Attorney General's contention that the proportionality review universe be limited only to cases in which the death penalty has been imposed—thirty-three out of 117 death-penalty trials—we have had the benefit of the interim

report of our Special Master. That report informs us of the master's preliminary recommendation that the universe include *all* penalty-trial cases—not only those in which the death penalty has been imposed.

In addition, the master recommends that the universe include homicide cases determined by him to have been clearly death-eligible but in which the prosecutor had elected not to seek the death penalty. The master expects to identify seventy to ninety of such cases since 1982. Thus, the master's preliminary proposal appears to contemplate a beginning universe of 185 to 205 cases. The practice of including such cases in the universe is estimated to add approximately ten to fifteen cases per year that were clearly death-eligible but did not result in a penalty trial.

We decline at this preliminary stage to accept either the recommendation of the Attorney General or that of the Special Master. It is appropriate to observe, however, that the specific pool of cases used to determine whether a particular death sentence is disproportionate will not, in all likelihood, involve the entire universe of cases available for the Court to use in proportionality review. That is, in conducting proportionality review of a particular death sentence, the Court will undoubtedly be required to select from the overall universe—however that may ultimately be constituted—those specific cases that may appropriately be compared with the particular death sentence before the Court.

In selecting those specific cases, the Court anticipates that it will have the benefit of argument by both the State and counsel for the defendant. Thus, defining the universe of cases available for proportionality review will not automatically determine which cases within the universe will be used in the review of any particular death sentence.

We are persuaded that our eventual decision in respect of the appropriate universe of cases for proportionality review will be

better informed by our awaiting the final report and recommendation of the Special Master and the comments and arguments of interested parties addressed thereto. Hence, we decline at this time to define that universe on the basis of the arguments and information now before the Court.